446 So.2d 857 (1984)
Kemp WESLEY, Plaintiff-Appellant,
v.
CLAIBORNE ELECTRIC CO-OP, INC., Nationwide Insurance Company; and Federated Rural Electric Insurance Company, Defendants-Appellees.
No. 16027-CA.
Court of Appeal of Louisiana, Second Circuit.
February 21, 1984.
Rehearing Denied March 28, 1984.
Writ Denied May 25, 1984.
*858 McKinley & O'Neal by Hodge O'Neal, III, Monroe, for plaintiff-appellant.
Mayer, Smith & Roberts by Walter O. Hunter, Jr., Shreveport, for defendants-appellees Claiborne Electric and Nationwide Ins. Co.
Theus, Grisham, Davis & Leigh by J. Bachman Lee, Monroe, for defendant-appellee Federated Rural Electric Ins. Co.
Before PRICE and FRED W. JONES, Jr., JJ., and WILLIAM A. CULPEPPER, J. Pro Tem.
PRICE, Judge.
This is a suit for workers' compensation filed by claimant against his employer, its former compensation insurer, and its present compensation insurer. Claimant appeals from the trial court holding that any claim arising from a heart attack which he suffered in October 1979 has prescribed.
On April 23, 1982, claimant filed a petition for workers' compensation benefits, alleging that he suffered a heart attack while on the job sometime prior to May 1, 1981, and claiming full compensation for total permanent disability. Federated Rural Electric Insurance Co., compensation carrier for Claiborne Electric since June 1, 1980, simply denied the occurrence of a job-related accident. Claiborne Electric and Nationwide Insurance Co., the compensation carrier until May 31, 1980, filed an exception of prescription, contending that claimant's heart condition was the result of a previous heart attack which occurred in October 1979 and any compensation claim arising therefrom has now prescribed since filed more than two years after any accident.
At the hearing on the exception, the following chronology was established. Claimant suffered his first heart attack in October 1979 while on the job, had triple by-pass surgery, and returned to work in March 1980. The employer elected to handle this claim through its group medical insurance carrier and completed the necessary forms, which claimant signed. All of his medical expenses were paid and claimant received some sick leave and/or vacation payments from defendant during this time. He also received a lump sum payment of $800 some time in March 1980.
Claimant returned to work performing the same labor, cutting and clearing rights-of-way, in March 1980 and worked until April 1981 when he suffered his second heart attack. He attempted to return to work again after this incident, but finally quit on May 4, 1981. He received sick pay and vacation pay thereafter until the last week in May. Then in August 1981 claimant received a check for $550.
Claimant completed the fourth grade in school, but cannot read or write other than to identify and sign his name. All insurance claim forms were completed by the employer which elected to treat his heart condition as nonwork-related. Claimant admittedly did not know the difference between his employer's group insurance carrier and its workers' compensation carrier.
The trial court held that any claim arising from claimant's October 1979 heart attack has prescribed under La.R.S. 23:1209 and dismissed any claim arising therefrom as to both the employer and the compensation insurer. Plaintiff appeals, contending the trial court erred in failing to find an interruption or suspension of prescription, or failing to estop defendants from urging a plea of prescription of the October 1979 occurrence.
La.R.S. 23:1209 provides for three different time limitations on workers' compensation claims: one year from the date of the accident, one year from the last compensation payment for total disability or three years from the last payment for partial disability, or one year from the time the injury develops if not immediately manifest, but no more than two years after the accident. Since this claimant was aware of the manifestations of his disabling heart condition by October 1979, any claim arising *859 from that occurrence would not be timely unless some interruption or suspension of the time limitation is established. While this issue may appear to be moot in light of the later incident, its significance lies in the possibility that it might later be determined on the merits that claimant's sole claim arises from the 1979 occurrence and the 1981 occurrence was simply a manifestation of that condition. We therefore must consider the correctness of the trial judge's determination that claimant failed to establish a tolling of the prescriptive period.
There is no dispute that the first heart attack occurred in October 1979 and no suit was filed until April 1982. Thus, the suit is prescribed on its face and the burden falls upon claimant to show that the running of the time limitations was interrupted in some manner.
It is well settled that an employer who lulls an injured employee into a false sense of security may not later interpose a plea of prescription to the worker's untimely suit for compensation benefits. Landry v. Ferguson, 279 So.2d 185 (La.1973); Dupaquier v. City of New Orleans, 260 La. 728, 257 So.2d 385 (1972). The claimant in such a case must demonstrate that "words, actions, or inactions on the part of the employer or insurer induced him to withhold suit until the time for prescription had passed." Miller v. Olinkraft, Inc., 395 So.2d 902 (La.App. 2d Cir.1981); Malone & Johnson, Workers' Compensation, § 384, 13 La.Civ.Law Treatise 261 (2d Ed.1980).
This claimant completed the fourth grade but remained unable to read or write. He completed no forms, merely signed what the employer told him to sign and did not know the difference between sickness and accident benefits under the group medical insurance and workers' compensation benefits. His medical expenses were all taken care of during both illnesses. He received weekly checks from his employer for a time while he was unable to work and a later lump sum payment which remains unexplained. Shortly thereafter he returned to work and continued his employment until May 1981 sometime after the second heart attack.
We believe that where a claimant shows that during his period of disability, he has received wage continuation payments from or through his employer which could reasonably be construed as compensation benefits or payments in lieu of compensation, the defendant must bear the burden of showing claimant actually understood the nature of the payments or was unreasonable in the construction he placed on the payments. See Williams v. International Lubricant Corporation, 341 So.2d 17 (La.App. 4th Cir.1976), writ denied 342 So.2d 872 (La.1977). It is clear that while this claimant did not understand the nature of the payments he received while unable to work, he believed his employer was overseeing his interests and making payments in lieu of regular wages lost as a result of his heart condition.
As stated by the court in Williams:
... An employee, with a layman's knowledge of statutory entitlement to some type of benefits after an injury occurs on the job, is easily subject to intentional or unintentional delusion when the employer shortly after disability initiates payment of benefits in an amount equal to or greater than maximum compensation benefits. Under such circumstances it is reasonable for an employee (who receives no contrary indication from his employer at that time) to believe that the payments are in fulfillment of his employer's statutory obligation to compensate him for the loss of salary. It is also reasonable that during the period of the payments the employee would refrain from consulting counsel in the belief that he is receiving the benefits to which he is entitled. On the other hand, the employer is well aware of the difference between compensation benefits and sick pay benefits, and in order to claim that prescription ran during the payment of sick pay benefits, the employer must show that the employee was not reasonable in such a belief.
*860 This particular claimant obviously had a less than average knowledge of the benefits to which he was entitled and there is no evidence to indicate his employer even attempted to explain the nature of the payments made. Inasmuch as his medical needs were being met and he received payments with which to meet his living expenses until he was able to return to work, he evidently did not consider seeking counsel from anyone as to his right to compensation. It is thus clear that this claimant was unaware that these payments were sick pay benefits rather than payments from his employer to compensate for his loss of income. He was thus lulled into a sense of security, whether intentionally or unintentionally, which caused him to withhold assertion of his claim until he found himself permanently disabled and receiving no benefits from any source.
Under the liberal rules of construction afforded the workers' compensation statute, we find these defendants are estopped to plead prescription with regard to claimant's October 1979 heart attack.
For the reasons assigned, the judgment appealed is reversed and the case is remanded for further proceedings consistent with the holding of this opinion.
REVERSED AND REMANDED.